JOHN IRVING SLADE BY HIS NEXT FRIEND, IRVING W. SLADE v. NEW HANOVER COUNTY BOARD OF EDUCATION

No. 705IC558

(Filed 13 January 1971)

1. Automobiles § 132— passing stopped school bus — purpose of statute

   The statute making it unlawful for an approaching motorist to pass a stopped school bus that has its mechanical stop signal displayed is designed for the protection of life, limb and property.

2. State § 8; Schools § 11— liability of school bus driver — injury to student crossing highway

   In a tort claim action to recover for injuries received by a six-year-old student who was hit by a truck on a busy highway shortly after getting off a school bus, the Industrial Commission correctly held that the responsibility of the school bus driver to the student was not limited to the mere discharge of the student in a place of immediate safety, where (1) the student was riding the bus only for the third time, (2) the student was forced to cross the highway in order to reach his home, and (3) the act of the bus driver in withdrawing the mechanical stop sign and moving forward prior to the student's crossing the road increased the danger to the student by releasing the stopped traffic.

3. **Schools § 11; State § 8— operation of school bus — standard of care of the driver**

   The care which a school bus driver must exercise toward a school bus passenger is proportionate to the degree of danger inherent in the passenger's youth and inexperience.

4. **Negligence § 10— insulating negligence — availabilty of defense**

   The defense of insulating negligence is not available where the negligence of the first party continues to be a proximate cause up to the moment of injury.

5. **Negligence § 10— intervening negligence — foreseeability of negligent act**

   If the intervening act and resultant injury could have been reasonably foreseen, it cannot insulate prior negligence.

6. **Negligence § 36; Schools § 11; State § 8— liability of school bus driver — injury to student crossing highway — insulating negligence**

   In an action to recover for injuries received by a six-year-old student who, shortly after getting off a school bus, was hit by a truck as he attempted to cross a busy highway, findings of negligent conduct on the part of the truck driver would not have insulated the bus driver's negligence in failing to see that the student was in a place of safety.

7. **Schools § 11; State § 8; Evidence § 29— liability of school bus driver — injury to student crossing highway — admissibility of driver handbook**

   A publication entitled *A Handbook for School Bus Drivers of North Carolina* was properly admitted in evidence, over the objection of defendant board of education, in a tort claims action to recover for injuries to a six-year-old student who was hit by a truck shortly after getting off a school bus, where the publication was used by the board of education to instruct its drivers on the care of bus passengers.

8. **Evidence § 29— admissibility of safety codes or rules**

   Although safety codes or rules not having the force of law are ordinarily inadmissible in evidence, they are admissible as some evidence that a reasonably prudent person would adhere to their requirements when it appears that they have been voluntarily adopted as a guide for the protection of the public.

9. **State § 10— tort claim proceeding — findings of fact by Industrial Commission — appeal**

   Findings of fact by the Industrial Commission are conclusive if there is any competent evidence to support them. G.S. 143-293.

APPEAL by defendant from order of the North Carolina Industrial Commission, filed 19 May 1970.

This claim under the State Tort Claims Act (G.S. 143-291 *et seq.*) is for personal injuries sustained by the minor plaintiff

shortly after he alighted from a school bus in New Hanover County on 6 September 1968.

The claim was originally heard by Deputy Commissioner Leake. His decision and order, filed 4 March 1970, denied recovery. Plaintiff appealed to the Full Commission and on 19 May 1970 the Commission filed its decision and order unanimously holding that the minor plaintiff's injuries were caused by the actionable negligence of defendant's school bus driver while acting within the scope of her employment. Damages were ordered paid in the sum of $15,000, the maximum amount allowed by the Act.

Evidence before the Commission tended to show the following:

On 6 September 1968 the minor plaintiff, a six-year-old first grader in his first year of school, was a passenger on a school bus operated by Mrs. Doris S. Grady. Mrs. Grady stopped the bus on the east side of U. S. Highway 117 where it is intersected from the east by Jamaica Drive. Children who lived in the vicinity of the intersection were told to disembark. Approximately six children, including the minor plaintiff, got off the bus. Mrs. Grady kept the bus in a stationary position for an interval of time in which she observed all the children that she could see start down Jamaica Drive. She did not count the children and did not ascertain the whereabouts of the minor plaintiff. In order to get home it was necessary for the minor plaintiff to cross the highway and go north about fifty feet to Seitter Drive where his home was located. Mrs. Grady, after observing certain of the children proceeding east along Jamaica Drive, put the bus in motion and proceeded north for about 94 yards at which time she looked in her rear view mirror and saw the minor plaintiff standing on the east side of the highway. She remarked "Don't tell me he has to cross the road." Upon traveling a short distance further, Mrs. Grady observed that traffic behind her had stopped. She immediately stopped and returned to Jamaica Drive where she found the minor plaintiff lying on the highway at a point near the west side of the pavement.

Gordon Rivenbark testified that he was following the school bus and stopped behind it. He recalled that one car was between him and the bus. Rivenbark testified that as the bus moved off he saw a little boy standing on the side of the road. Rivenbark

started forward and the child started across the highway in front of him, causing him to stop. The child then returned to the east shoulder of the highway. Rivenbark again started north and immediately after his vehicle passed the point where the child was standing, the child ran across the east lane of the highway, passing behind Rivenbark's car and into the path of a pickup truck traveling in the southbound lane. The truck struck the child as he neared the westerly edge of the pavement inflicting substantial permanent injuries.

The evidence indicated that the minor plaintiff's mother carried him to school on each of the four days he had attended and went for him on the afternoon of 3 September. On the afternoon of 4 September the child boarded a wrong school bus which returned him to the school. On the afternoons of the 4th, 5th and 6th the child rode home on the school bus operated by Mrs. Grady. On the first two days the bus proceeded in a southerly direction along U. S. Highway 117 and stopped on the west side of the highway at Seitter Drive. On these occasions the minor plaintiff got off the bus and walked directly to his home on Seitter Drive. However, on the afternoon of 6 September, the direction of the bus route was changed and the bus proceeded along Highway 117 in a northerly direction and stopped on the opposite side of the road approximately 50 feet south of Seitter Drive, making it necessary for the first time that the minor plaintiff cross the road in order to reach his home.

The experience of getting on the wrong bus had upset the minor plaintiff and he refused to board the bus on the afternoon of the accident until his teacher had explained to the bus driver where he lived and where he was to get off the bus. He wore an identifying name tag. The driver recalled this conversation with the teacher. She knew that it was necessary for students who lived on Seitter Drive to cross to the west of the highway. She recalled also that no one crossed the highway in front of the bus before she withdrew the stop sign and started the bus forward.

In its decision and order the Commission made thorough findings consistent with the evidence presented and concluded that the school bus driver was negligent in that she failed to see that the minor plaintiff was in a place of safety before the school bus was put in motion. Defendant excepted to the Commission's order and appealed.

*Marshall, Williams & Gorham by Lonnie B. Williams and Addison Hewlett, Jr., for plaintiff appellee.*

*Attorney General Morgan by Staff Attorney Sauls for defendent appellant.*

GRAHAM, Judge.

In concluding that the minor plaintiff's injuries resulted from the actionable negligence of the school bus driver, the Commission applied the standard of care set forth by the Supreme Court in *Greene v. Board of Education,* 237 N.C. 336, 75 S.E. 2d 129, wherein it is stated as follows:

"This duty to exercise a high degree of caution in order to meet the standard of care required of a motorist, *Rea v. Simowitz,* 225 N. C. 575, 35 S.E. 2d 871, when he sees or by the exercise of ordinary care should see children on a highway applies with peculiar emphasis to the operator of a school bus transporting children to their homes after school. His passengers are in his care and he knows that many of them must cross the road after they alight from the bus. It is his duty to see that those who do alight are in places of safety before he again puts his vehicle in motion."

Defendant contends that the Commission erred in applying this standard of care to the facts of this case, pointing out that in the *Greene* case, the school bus itself caused the death of plaintiff's intestate, whereas here, the injuries complained of were caused by another vehicle. In our opinion this furnishes no sound basis for distinguishing the cases. The element of negligence present in *Greene* was not the failure of the driver to exercise caution in the operation of his bus, but his failure to ascertain that his discharged passenger was in a place of safety before starting the bus forward. The following language from the opinion makes this point clear: "Negligence here does not rest on the fact the bus driver, by the exercise of ordinary care, could have seen the child in a position of peril in time to stop and avoid colliding with her. It lies in the fact that he, having discharged the children from the bus, failed to exercise proper care to ascertain that they and each of them 'had crossed the highway in safety' or were 'otherwise out of danger.'"

[1] It is a violation of the law for any motorist approaching a school bus from any direction to fail to stop while such bus

Slade v. Board of Education

is stopped and engaged in receiving or discharging passengers, or at any time while such bus is displaying its mechanical stop signal; or to fail to remain stopped until such mechanical stop signal of the bus has been withdrawn or until such bus has moved on. G.S. 20-217. This statute is designed for the protection of life, limb and property. *State v. Weston,* 273 N.C. 275, 159 S.E. 2d 883.

When the stop signal on a school bus is released and the bus moves forward other motorists are in effect notified that they may proceed. Release of the traffic in this manner is particularly perilous under circumstances such as were present here. The minor plaintiff, a child of extremely tender years, was obviously inexperienced and likely confused and frightened by the experience he had in boarding the wrong bus only two days previously. The only two times in his entire life that he had gotten off a school bus, it had been stopped immediately in front of the street where he lived and on the side of the highway where his home was located. On the day of his injury, he was let out on the opposite side of the highway, at a point some fifty feet south of the street where he lived. Once the school bus moved on, there was nothing to signal motorists to stop or to remain stopped so that the child could cross the highway safely. He was left alone to attempt to maneuver through the traffic of a busy U. S. highway. The danger he faced was not limited to the movement of the school bus. Indeed, the flow of traffic, released by the bus's movement forward, constituted a graver danger.

[2] Defendant contends that the evidence does not support the Commission's finding and conclusion that the bus driver failed to see that the plaintiff was in a place of safety before putting the bus in motion. It is the apparent position of defendant that the bus driver's duty to the child terminated when she determined that he was safely off the bus and not in a place of immediate danger. The case of *Shaw v. Barnard,* 229 N.C. 713, 51 S.E. 2d 295, is cited in support of this position. In that case plaintiff's intestate (an adult) was ejected from a bus owned by defendant transit line for being drunk and disorderly. After the bus moved away he was struck by an automobile and killed. The Supreme Court held that the bus driver was under no duty to pilot deceased home—only to afford him a safe landing. We refuse to hold that a six-year-old child, riding a school bus for

only the third time in his life, is entitled to no more attention when discharged from the bus than an adult evicted from a common carrier under the circumstances of the *Shaw* case.

The case of *White v. Chappell*, 219 N.C. 652, 14 S.E. 2d 843 is more supportive of defendant's position. There, an eight-year-old boy, traveling with his mother on defendant's bus, alighted from the bus and was killed when he ran into the path of a car from the rear of the bus. A majority of the members of the Supreme Court held that defendant's duty to the passenger ended when he alighted at a place of safety. Three justices dissented saying that the defendant failed to perform its full duty in putting off an inexperienced child, beside the road, at an unusual place, without warning him of the known danger from an approaching automobile. In the majority opinion it was noted that "the plaintiff insists that the duty owed by defendant Bus Corporation to his intestate continued until he was safely across the highway, and for support he relies upon these cases in other jurisdictions: (citations omitted).

An examination reveals that each of these cases relates to the duty owed by the operator of a school bus in transporting children from their homes to school and from school to their homes—and are clearly distinguishable from the case in hand."

One of the cases which the court found distinguishable was *Taylor v. Patterson's Adm'r.*, 272 Ky. 415, 114 S.W. 2d 488. The facts of that case are close to those in the case before us. There, a jitney driver, under contract to transport school children, discharged a seven-year-old boy at a place where it was necessary for him to cross the street to reach his home. The driver testified that "[g]enerally, I stayed there and saw the child go across, but he got out and stopped like he was looking at something else and didn't go straight on. I backed out and drove on down the street then." The child was struck by a truck while attempting to cross the street. The court held that the driver's duty did not end when the child passenger alighted upon the sidewalk, but required that he exercise the highest degree of care for the boy's safety until he was safely across the street and out of danger from the passing traffic.

In *Hunter v. Boyd, et al*, 203 S.C. 518, 28 S.E. 2d 412, the plaintiff sought recovery for the death of his intestate, a school student killed while attempting to cross the street after alight-

ing from a school bus. The complaint alleged that the student was discharged from the bus 167 yards from his home and on the opposite side of the highway from his home. He ran from behind the bus into the path of a car traveling in the same direction of the bus. Cars were approaching in both directions and it was alleged that the bus driver did not care for and protect the child and see that he got safely across the highway, but on the contrary left him in a highly dangerous. situation. The South Carolina Supreme Court held that the complaint sufficiently alleged negligence as to the bus driver. The court stated:

"[W]hile we would lay down no hard and fast rule applicable to every case, we think it may justly be said that circumstances indicating danger might require the driver of a school bus to unload his passenger pupil or pupils on the side of the highway next to their homes; or if this be not reasonably practicable under existing conditions the bus should at least remain stopped for a sufficient length of time to allow the pupil or pupils alighting therefrom to cross the highway to the side thereof on which their homes are located.

. . . [T]he moving of the school bus was a signal indicating to other cars approaching from both directions that they might proceed."

In *Gazaway v. Nicholson*, 61 Ga. App. 3, 5 S.E. 2d 391, the question involved was whether a seven-year-old boy had been discharged from a schol bus in a place of safety. The court stated:

"The passenger in question was a boy about seven years of age, and even if it could be said that the place where he was deposited was safe for an adult, it does not necessarily follow that it was safe for a young child. . . . [I]f one leaves a young child at the same spot, and in its immaturity it wanders into the street and is run over and injured by the street car, could it then be reasonably said that the child had been put in a place of safety? These considerations impel us to the conclusion that it would be too narrow a construction to say that the safety of a place must be determined solely by whether or not one would be safe if he remained in it."

See also *Trust Co. v. Board of Education*, 251 N.C. 603, 111 S.E. 2d 844; *Davidson v. Horne*, 86 Ga. App. 220, 71 S.E. 2d

464; *Porter v. Bakersfield & Kern Elec. Ry. Co.,* 36 Cal. 2d 582, 225 P. 2d 223; *School Board v. Thomas,* 201 Va. 608, 112 S.E. 2d 877; Annot., 34 A.L.R. 3d 1210 (1970); Annot., 86 A.L.R. 2d 489, at p. 590 (1962).

[2, 3] What constitutes a place of safety depends upon the age, experience and ability of the passenger. A place of safety for an eighteen-year-old high school senior of ordinary experience and intelligence might be a place of peril for an inexperienced six-year-old first grader. The care which a school bus driver must exercise toward a school bus passenger is proportionate to the degree of danger inherent in the passenger's youth and inexperience. We hold that under the circumstances of this case the Commission correctly refused to limit the responsibility of the school bus driver to the mere discharge of the minor plaintiff in a place where he would be safe so long as he remained.

[4-6] Defendant next contends that any negligence on the part of the bus driver was insulated by negligence on the part of the driver of the pickup truck which struck the minor plaintiff. This contention is without merit. The evidence presented at the hearing would not support findings of negligent conduct on the part of the driver of the pickup truck (compare *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488). Moreover, the defense of insulating negligence is not available where the negligence of the first party continues to be a proximate cause up to the moment of injury. *Cox v. Gallamore,* 267 N.C. 537, 148 S.E. 2d 616; *Wise v. Vincent* and *Stronach v. Vincent,* 265 N.C. 647, 144 S.E. 2d 877. Also, if the intervening act and resultant injury could have been reasonably foreseen, it cannot insulate the prior negligence. *Davis v. Jessup* and *Carroll v. Jessup,* 257 N.C. 215, 125 S.E. 2d 440; *Watters v. Parrish,* 252 N.C. 787, 115 S.E. 2d 1. Findings of negligent conduct on the part of the pickup driver would therefore not have compelled a conclusion that the bus driver's negligence in failing to see that the minor plaintiff was in a place of safety was insulated.

[7] Finally, defendant argues that the Commission erred in receiving into evidence plaintiff's Exhibit 1 entitled *A Handbook For School Bus Drivers of North Carolina.* J. Frank Jameson who was in charge of school bus transportation for defendant testified that the book was used to train school bus drivers. Also, that it was referred to from time to time if problems arose.

The Director of Driver Education and Accident Records Division of the North Carolina Department of Motor Vehicles testified that the book was published by that division and used in the training of school bus drivers. Mrs. Grady, the school bus driver in the instant case, testified that she had studied the book and tried to be thoroughly familiar with it. She recalled the provision in the book which instructed drivers to count the children as they leave the bus and again on both sides of the road.

We think the handbook was properly received in evidence. In *Trust Co. v. Board of Education, supra,* the parties stipulated before the Industrial Commission that the County Board of Education had adopted certain rules and regulations governing the operation of its school buses. In reversing an order of the Commission dismissing the action the Supreme Court stated: "The plaintiff was not permitted to introduce any evidence, not even the rules about which the parties stipulated. In our opinion, in an informal proceeding like that provided in our Tort Claims Act, the plaintiff is entitled to have its evidence heard, and the evidence, together with the informal pleadings, considered by the hearing commissioner in making his findings of fact and conclusions of law."

[8] Defendant cites the general proposition that safety codes or rules not having the force of law are not admissible in evidence. *Sloan v. Light Co.,* 248 N.C. 125, 102 S.E. 2d 822; *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 88 S.E. 2d 333; Annot., 75 A.L.R. 2d 778 (1961). However, where it appears that defendant has voluntarily adopted the rules or safety standards as a guide for the protection of the public, they are admissible as some evidence that a reasonably prudent person would adhere to their requirements. *Wilson v. Hardware, Inc.,* 259 N.C. 660, 131 S.E. 2d 501; *Stone v. Proctor,* 259 N.C. 633, 131 S.E. 2d 297. The exhibit complained of was published for use by defendant and was relied upon by defendant in the instruction of school bus drivers. The book obviously set forth the rules and standards of conduct which defendant instructed its drivers to follow in order to protect passengers and the public. They are defendant's rules and standards. It is universally held that a defendant may not complain about the introduction in evidence of its own relevant rules of conduct. See for instance *Bilodeau v. Fitchburg & L. St. Ry. Co.,* 236 Mass. 526, 128 N.E. 872 (Rules for operation of railroad cars) ; *Hurley v. Conn. Co.,*

118 Conn. 276, 172 A. 86 (defendant trolley company's rules for the conduct of motormen) ; *Reed v. Missouri-Kansas-Texas Ry.*, 362 Mo. 1, 239 S.W. 2d 328 (Rules for loading commodities, published by the Association of American Railroads of which defendant was a member).

[9] Findings of fact by the Industrial Commission are conclusive if there is any competent evidence to support them. G.S. 143-293; *Mitchell v. Board of Education,* 1 N.C. App. 373, 161 S.E. 2d 645. We hold that the thorough and explicit findings by the Commission are supported by the evidence. The findings, in the light of the applicable principles of law, are sufficient to support the action taken.

The order of the Industrial Commission is affirmed.

Affirmed.

Chief Judge MALLARD and Judge PARKER concur.