The undersigned have reviewed the Decision and Order based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned are of the opinion that the Deputy Commissioner erred in her finding of no negligence on behalf of defendant. Accordingly, the Decision and Order of September 18, 1992, is HEREBY REVERSED, and the undersigned proceed to make their own Findings of Fact, Conclusions of Law and ultimate Award.
EVIDENTIARY RULINGS
1. Counsel for the plaintiff assigns error in allowing testimony regarding a "memo" allegedly received by the defendant Champion. Plaintiff argues that reference to the "memo" violates the rules against hearsay and moves that all reference to the "memo" be stricken from the record and from consideration by the Full Commission based upon admissions of counsel for the defendant. (T.p. 127-128). Plaintiff argues the fact that a memo was received in February of 1988 is inconsistent with the official bus route for the year 1988-89. (T., p. 145; Plaintiff's Exhibit 5, p. 8).
Plaintiff's motion to strike is HEREBY ALLOWED. All reference to the alleged written "memo" will be stricken from the record for consideration in light of defense counsel's statement that there was no written memo.
2. Counsel for plaintiff further objects and assigns error to the introduction of evidence regarding Medicaid payments and coverage for medical treatment received by Bernice Hammie. Plaintiff argues that the admission and consideration of Medicaid payments would be in violation of the Collateral Source Rule.
Plaintiff's motion to strike is HEREBY ALLOWED, and the mention of Medicaid payments is HEREBY STRICKEN from the record. (T., p 269-270) and from any consideration.
The undersigned find as fact and conclude as a matter of law the following, which were entered into by the parties as
STIPULATIONS
1. It is stipulated that the North Carolina Industrial Commission properly has jurisdiction of the parties and the subject matter herein.
2. In addition to this jurisdictional stipulation, the parties stipulate as follows:
 (a) On May 11, 1989, the plaintiff was a retarded person attending the Eaton Johnson Elementary School in Vance County, North Carolina.
 (b) On May 11, 1989, the plaintiff lived with her family in a mobile home in the Southwood Trailer Park immediately adjoining U.S. Highway No. 1 in the vicinity of the Ball-Incon Plant. Transportation was provided to and from Eaton Johnson Elementary School by a school bus operated and maintained by the Vance County Schools.
 (c) On May 11, 1989, the driver of the school bus was Lucy Allen Champion. The defendant, Champion, was an employee of the Vance County Administrative Unit and her salary was paid from the State Public School Fund.
 (d) Prior to the school year 1988-89, the bus for handicapped children would pick up and discharge Bernice Hammie at her trailer. During the school year 1988-89, Bernice Hammie was the only student riding Bus 2805 from the Southwood Trailer Park.
 (e) Between December, 1988 and May 11, 1989, when Bernice Hammie was injured, the bus route for Bus 2805 was changed so that the bus would discharge Bernice Hammie on U.S. Highway No. 1 rather than at her home.
 (f) Immediately prior to May 11, 1989, Bernice Hammie was being discharged on the shoulder of the southbound right of way of U.S. Highway No. 1 adjacent to the entrance of the Ball-Incon Plant. The right of way of U.S. Highway No. 1 south of the Ball-Incon Plant was unobstructed for a distance of at least one-half mile.
 (g) Prior to discharging Bernice Hammie on May 11, 1989, the defendant, Lucy Champion, did not observe an oncoming Lincoln Continental driven by one Linwood Seaward in the northbound lane of U.S. Highway No. 1.
 (h) On May 11, 1989, Bernice Hammie crossed the southbound lane of U.S. Highway No. 1 and was struck by a 1982 Lincoln driven by Linwood Seaward as she crossed the northbound lane. This resulted in serious head injuries and a fractured pelvis among other injuries. Following this, Bernice Hammie was treated at Duke Medical Center.
 (i) The plaintiff contends that she was injured through the negligence of the defendant, Lucy Allen Champion, discharging the plaintiff, and she has suffered permanent injuries.
* * * * * * * * * * * * *
Based upon the competent and convincing evidence adduced from the record, the undersigned make the following
FINDINGS OF FACT
1. On May 11, 1989, Bernice Hammie was a twenty year old retarded woman living with her mother in the Southwood Trailer Park adjoining U.S. Highway 1 By-Pass in Henderson. She had attended programs for exceptional children in Vance County from the age of six.
2. According to psychological testing performed by Stephen L. Wagner, School Psychologist, in March of 1988, Bernice had an I.Q. of 36 and tested with a mental age of five to seven years in various categories. From the time she began schooling, Bernice was transported to and from her home, either by taxi or school bus until the school year 1987-88.
3. For the school year 1987-88, one or more children from the trailer park were in the exceptional children's program and rode the bus with Bernice. At that time, the bus driver began to pick up and discharge the students along U.S. 1 By-Pass. For the school year 1988-89, Bernice was the only rider from the trailer park riding the bus. She was also the only child aboard the bus who was discharged into U.S. Highway 1. The official bus route for 1988-89 provided that the bus would transport Bernice to and from her home inside Southwood Trailer Park.
4. The bus stop was across U.S. Highway 1 from the trailer park at the entrance to Ball-Incon. To the South of Ball-Incon is the Purolator Plant and a Roses facility. As the bus driver admitted, these plants as well as others in the vicinity, were large industries operating two or more shifts of employees. To the South of the bus stop, in the direction the bus was traveling on May 11, 1989, U.S. Highway 1 By-Pass was straight and unobstructed for a distance of more than one-half mile (as much as 3000 feet). Upon being discharged from the bus, the retarded student was required to cross the northbound lane of U.S. Highway 1 unattended to enter the trailer park.
5. In the course of her schooling, Bernice was taught traffic signs which were reviewed daily, although these did not specifically include bus safety. She had been shown film strips regarding bus safety. Even though Barbara Alston, Bernice's teaching assistant for many years, was able to describe occasions when Bernice had conducted herself safely in the company of other students and to cross a street if traffic were stopped, she did not have an opinion as to whether Bernice had the ability to respond to danger on the highway with moving, approaching traffic.
6. Bernice's family did not permit Bernice to use a stove unattended or ride her bicycle beyond the yard unattended because they did not feel they could rely on her judgment to recognize danger. She was not allowed to go out to the main highway unattended. Walter Sellers, an expert in the field of psychological testing and evaluation, testified that based upon the test results and his evaluations, it was unlikely that Bernice would have been able to recognize, anticipate, or be aware of the danger of the oncoming car as she crossed U.S. Highway 1 to her home on May 11, 1989.
7. On May 11, 1989, the defendant bus driver came to a stop in the southbound lane of U.S. Highway 1 By-Pass. She stated that she looked, but did not see, an oncoming vehicle. Bernice walked in front of the bus at a normal pace into the northbound lane and into the path of a Lincoln driven by the third party defendant, Linwood Seaward. The defendant bus driver stated that she did not see the oncoming car until Bernice was at the center line. Afrain Ortez, a student on the bus, stated that he heard the defendant bus driver scream and exclaim to her sister, the monitor, only after the oncoming car struck Bernice. Even though defendant Champion stated that she saw Bernice and the oncoming traffic when Bernice was at the center line, she did not blow the horn, yell, take other action, or make any comment prior to Bernice being hit.
8. Liebert Howes, a Department of Transportation bus instructor for twenty-eight years, and an expert in school bus safety, taught the defendant Champion. According to Howes and defendant's expert, Marcus Fountain, it takes at least from eight to ten seconds for a student to be discharged and cross a two-lane road. Bus drivers in Vance County were taught that they should look twenty seconds ahead before discharging a student. Mr. Howes felt it would be unsafe to discharge a retarded student when traffic was closer than fifteen seconds away, or for any other student, when traffic was closer than ten to twelve seconds away. He stated that Ms. Champion would have been taught the ten to twelve second guideline. In discharging small children or exceptional children he felt that drivers should not discharge these students where they would be required to cross a lane of travel.
9. According to the investigation and accident report received as Plaintiff's Exhibit 15, the original speed of the oncoming Seaward vehicle was approximately sixty miles per hour. There were ninety feet of tire impressions prior to the impact, and the driver brought his care to a stop within twenty-one feet following the impact behind the stopped school bus. Brenda Person and Della Kersey, who were a couple of cars behind the school bus, observed the oncoming vehicle before it reached the bus and struck the plaintiff. They both observed the vehicle approximately one quarter of a mile (ten to fifteen seconds) before the impact.
10. The plaintiff was in the roadway when she was hit, not having reached the edge of the road yet. The plaintiff sustained head injuries and a broken leg and pelvis, for which she was treated at Duke Medical Center. Medical expenses have been in excess of Forty Six Thousand Five Hundred Thirty-One Dollars and Forty-Seven Cents ($46,531.47). Counsel for the defendant, as well as the undersigned, acknowledge the great amount of pain and suffering which must have accompanied the plaintiff's immediate injury as well as her period of recovery.
11. One of plaintiff's legs remains shorter than the other, causing her to be unable to engage in physical activities, including running, jumping rope, playing kick ball or riding her bicycle. Testimony of family members, corroborated by the expert testimony of Walter Sellers, indicates loss of intellectual or cognitive functioning due to the accident.
12. In a separate third party action, plaintiff recovered one hundred thousand dollars ($100,000.00) from defendant, Seaward. Plaintiff has asked the Industrial Commission to reserve for consideration the issue of damages which this plaintiff is entitled to recover in excess of the third party recovery, thus addressing and resolving only the liability issues at this time.
13. The greater weight of the convincing evidence supports plaintiff's contention that the defendant bus driver failed to exercise ordinary care and was negligent by failing to maintain a proper lookout as she discharged the plaintiff. Defendant's evidence indicates that the bus was properly stopped with the safety arm extended. Thus, the main issue in contention was whether Lucy Champion was entitled to rely upon the upcoming vehicle to stop and whether her action, or lack thereof, constituted negligence on her part which was a proximate cause of plaintiff's injuries. The undersigned have resolved this issue in favor of plaintiff.
14. Undisputed records from Duke Medical Center, as well as testing performed by Stephen Wagner and Walter Sellers, demonstrate that Bernice Hammie was no more capable of recognizing the danger of oncoming traffic than a six or seven year old despite her chronological age of twenty years. Even though defendant's witnesses testified that exceptional students were taught traffic safety, this does not translate into being capable of independently crossing a major highway with oncoming traffic. Further, there was no indication that plaintiff received any training with regard to bus safety in addition to standard bus safety film strips. Further, in 1988, prior to the injury, test results by Stephen Wagner, Staff Psychologist, showed receptive skills in the five to seven age group, severe visual motor integration problems, an IQ of 36, functioning at early first grade. Independently, plaintiff was incapable of observing safety rules in this setting given her severe limitations.
In addition, for most of plaintiff's life, she had been transported door to door to school, meaning that she did not have years of repetitive experience or any considerable experience for that matter in watching for oncoming traffic which may not be following the rules of the road. She merely walked across the road when discharged to do so. With Lucy Champion driving the bus in 1988, the bus had picked up and delivered Bernice from her home for much of the year and had then begun discharging her on U.S. Highway 1 in the afternoons except when it was raining or except when Lucy Champion decided to bring plaintiff home. This was clearly a negligent deviation from the established bus route to be followed.
16. While defendant Linwood Seawood was negligent in driving under the influence, his negligence does not insulate or negate any negligence on behalf of defendant Champion. The negligence of Lucy Champion remains primary, if not concurring negligence as the cause of plaintiff's injuries. This is particularly the case since defendant Champion had been alerted to the family's concerns about the practice of discharging plaintiff on U.S. 1 and had initiated contact with Transportation Director Lonnie Raeford concerning a change on her bus route to preclude her from having to traverse the allegedly rough roads of the mobile home park. The undersigned note that the roads were not so impassable as to prevent defendant Champion from traversing them to pick up plaintiff in the mornings.
17. Defendant, Lucy Champion, breached the ordinary duty of due care in failing to keep a proper outlook. Further, defendant bus driver further violated the special duties imposed upon a school bus driver in the following respects:
 (a) That she failed to transport Bernice Hammie directly to her home as called for by the 1988-89 bus route.
 (b) That she failed to discharge Bernice Hammie on the western side of U.S. 1 so that she would not have to cross the lane of travel. To allow plaintiff to cross U.S. 1 was an unsafe practice under these circumstances.
 (c) In that she failed to warn or prevent the plaintiff from walking into the path of the oncoming Seaward vehicle.
 (d) For failure to see the approaching vehicle and react accordingly and by discharging the plaintiff in an unsafe place with a moving vehicle approaching.
18. Plaintiff counsel has requested that the Industrial Commission reserve for determination the issue of plaintiff's damages and accordingly the undersigned have just addressed the issue of compensability at this time.
19. The undersigned find no convincing evidence of contributory negligence on the part of the plaintiff with regard to any of her actions surrounding her compensable injury.
* * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. Defendant bus driver was negligent, failed to exercise due care, and breached her duty by failing to maintain proper lookout as she discharged the plaintiff.
2. In Green v. Mitchell County Board of Education, 237 N.C. 336,75 S.E.2d 129, (1953), another school bus driver negligence case, the North Carolina Court of Appeals noted the following:
 "He [the motorist] must recognize that children have less capacity to shun danger than adults; are more prone to act on impulse, regardless of the attendant peril; and are lacking in full appreciation of danger which would be quite apparent to a mature person." Id. at 340.
[Plaintiff in the case at hand was clearly functioning at the level of a child.] This duty of care which applies to the ordinary motorist, the Court of Appeals noted,:
 "applies with peculiar emphasis to the operator of a school bus transporting children to their homes after school. His passengers are in his care, and he knows that many of them must cross the road after they alight from the bus. It is his duty to see that those who alight are in places of safety before he again puts his vehicle in motion." Id. at 340. [emphasis added].
This duty, the Court of Appeals found, includes the duty to "supervise the activities of children discharged from the bus until they have crossed the highway in safety or otherwise out of danger." Id. at 341.
Thus, defendant bus driver had the duty to keep lookout at least for a period of time until plaintiff was out of danger and in a place of safety.
In Slade v. New Hanover County Board of Education, 10 N.C. App. 287,178 S.E.2d 316 (1971), the Court of Appeals extended "the place of safety" rule where a six-year-old crossing behind the school bus was struck by an oncoming car proceeding the opposite direction. Id. Of importance, the six-year-old decedent had just begun riding the bus and was unfamiliar with the route. Also, unlike previous afternoons, the driver had altered the route so that she discharged the students in the far lane requiring them to cross the highway to their homes. In affirming the Industrial Commission's award, the Court of Appeals adopted a holding that "[w]hat constitutes a place of safety depends upon the age, experience, and the ability of the passenger." Id. at 295.
"A place of safety for an eighteen year old high school senior of ordinary experience and intelligence might be a place of peril for an inexperienced six-year-old first grader. The care which a school bus driver must exercise toward a school bus passenger is proportionate to the degree of danger inherent in the passenger's youth and inexperience." Id. at 295.
Undisputed records from Duke Medical Center, as well as the testing performed by Wagner and Walter Sellers, demonstrate sufficiently that Bernice Hammie was no more capable than the six-year-old in Slade. Id.
This being the case, the school bus driver had a higher duty of care here to keep plaintiff out of harm's way than if plaintiff had been intellectually her chronological age of twenty.
Further, Slade clearly spelled out that the standard the school bus driver is "not insulated by negligence on the part of the driver . . . which struck the plaintiff." Id. at 295. The school bus driver's responsibility continues until the plaintiff reaches the place of safety, and this standard involves a greater degree of responsibility than "the mere discharge of the minor plaintiff in a place where he could be safe so long as he remained." Id. at 293-95.
Plaintiff breached her duty in the following respects:
(a) That she failed to transport Bernice Hammie directly to her home.
(b) That she failed to discharge Bernice Hammie on the western side of U.S. 1 so that she would not have to cross the lane of travel which was an unsafe practice under these circumstances.
(c) In that she failed to warn or prevent the plaintiff from walking into the path of the oncoming Seaward vehicle (Seward's level of intoxication being irrelevant in that defendant had a duty to keep a lookout for oncoming cars that may not be stopping). Defendant bus driver breached her duty in failing to notice the oncoming, speeding vehicle until it was too late to prevent plaintiff from being discharged from the bus and being hit.
and (d) By discharging the plaintiff in an unsafe place with a moving vehicle approaching.
3. Defendant bus driver's negligence was a primary cause of plaintiff's being struck by the oncoming vehicle and resultant injuries.
4. The issue of damages is being reserved at this time pursuant to plaintiff's request.
* * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law, engender the following
AWARD
1. Plaintiff's injuries are compensable and shall be compensated by defendant accordingly as hereafter may be agreed upon or awarded by the Commission.
2. The issue of damages is being reserved at this time pursuant to plaintiff's request and can and will be addressed when the Commission is notified of such intent, pending final determination of the case.
This the __________ day of ________________________, 1995.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________ JAMES J. BOOKER COMMISSIONER
S/ ______________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm 01/11/95