***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Decision and Order of the Deputy Commissioner.
 *********** EVIDENTIARY RULING
Plaintiff filed a Motion to Take Additional Evidence on June 20, 2003 to which defendant responded on June 25, 2003. Plaintiff requested that the Full Commission allow plaintiff to take an additional deposition. The Full Commission denies plaintiff's motion.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the jurisdiction of the North Carolina Industrial Commission.
2. This is a claim for damages under the North Carolina Tort Claims Act.
3. All medical records can be admitted into evidence subject to the parties' right to offer the testimony of any treating physician or medical examiner.
4. Jeffrey Strong was acting within the course and scope of his duties as an employee of the Vance County Board of Education on June 1, 1999.
5. Judicial notice is taken of plaintiff's life expectancy of 69.6 years based upon N.C. Gen. Stat. 8-46.
6. The following exhibits were entered into the evidence of record at the hearing before Deputy Commissioner Hall:
a. Plaintiff's Exhibit A — photo
b. Plaintiff's Exhibit B — page from handbook
c. Plaintiff's Exhibit C — diagram
d. Plaintiff's Exhibit D — photo
e. Plaintiff's Exhibit E — photo
f. Plaintiff's Exhibit F — photo
g. Plaintiff's Exhibit G — deposition of Mr. Strong
h. Plaintiff's Exhibit H — deposition signature page
i. Plaintiff's Exhibit I — page from handbook
j. Plaintiff's Exhibit J — accident report
k. Plaintiff's Exhibit K — notes Strong
l. Plaintiff's Exhibit L — notes Evans
m. Plaintiff's Exhibit M — photo
n. Plaintiff's Exhibit N — photo
o. Plaintiff's Exhibit O — death certificate
p. Plaintiff's Exhibit P — letters of administration
q. Plaintiff's Exhibit Q — life tables
r. Defendant's Exhibit 1 — deposition of Mr. Strong
s. Defendant's Exhibit 2 — driver's statement
t. Defendant's Exhibit 3 — accident report
u. Defendant's Exhibit 4 — memo
7. The issues before the Commission are whether the decedent, Kim Williams, Jr., was injured and killed as a result of the negligence of defendant's employee; and if so, what amount of damages is plaintiff's estate entitled to recover for the wrongful death of Kim Williams, Jr.?
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. Plaintiff in this claim is Gayle Kearney, the mother and executrix of the estate of Kim Williams, Jr. (hereinafter "decedent").
2. In her Affidavit, plaintiff alleged that the school bus driver, Jeffrey Strong, negligently ran over decedent after discharging him from the school bus and further alleged that Mr. Strong was not paying attention when he drove off, which resulted in decedent's death.
3. In defendant's answer, defendant denied that the named employee was negligent.
4. During the hearing before the Deputy Commissioner, plaintiff moved to amend Ms. Kearney's Affidavit to conform to the evidence as to the actual date of the incident and that motion was allowed.
5. During the afternoon of June 1, 1999, decedent was seven years old and was a passenger on Vance County School Bus No. 108. Decedent was being transported from E. M. Rollins Elementary School in Henderson, North Carolina to his home on Spring Street in Henderson, North Carolina.
6. School Bus No. 108 was operated by Jeffrey Strong.
7. The route taken by School Bus No. 108 was devised by the transportation section of the Vance County Schools and was the same route taken for the month prior to the accident in question.
8. Neither Mr. Strong nor any bus driver with Vance County Schools has the authority to alter or deviate from the bus route provided to them. Horace G. Lawrence, who has been a Department of Motor Vehicles employee in the school bus and traffic safety program for 11 years, testified that a school bus driver cannot deviate from the established route unless he obtained the approval of the school's principal and defendant's transportation director.
9. The afternoon route for School Bus No. 108 in Henderson required travel in a northern direction on Parham Street with a stop at Spring Street. Spring Street meets Parham Street in a "T" intersection. The bus stop for decedent was at this intersection of Spring Street and Parham Street. The location of the stop required decedent and other students to cross over Parham Street to reach Spring Street.
10. On June 1, 1999, School Bus No. 108 approached the Spring Street stop. As proscribed by bus driving policies, Mr. Strong observed that it was safe to initiate the yellow, flashing warning lights and brought the bus to a halt. Mr. Strong then initiated the red, flashing warning lights, activated the retractable "stop sign" that was attached to the bus, and opened the entry door. At that time, decedent and his four siblings began disembarking at the designated Spring Street stop. While they were disembarking from the bus, Mr. Strong counted the five Williams children. Mr. Strong then observed the five children cross in front of the bus, go across Parham Street, and reach safety on Spring Street. At that time, Mr. Strong then again counted the five Williams children, who were beginning to proceed to their home.
11. After counting the five Williams children on Spring Street, Mr. Strong began a check of the various mirrors on the bus, including a rectangular mirror that provides a view of the children seated behind him. Upon checking this mirror, Mr. Strong noticed that a couple of students were not seated. Therefore, Mr. Strong turned in his driver's seat and indicated to the students that the bus was about to move and that they needed to return to seated positions. The students immediately responded to Mr. Strong's instructions.
12. Thereafter, Mr. Strong continued his check of mirrors, including those mirrors that provided views of possible traffic and those that provide a view of the areas around the bus. Satisfied that he could safely proceed, Mr. Strong disengaged the various warning lights and began to move forward. Within a few feet, Mr. Strong felt two "bumps," which he believed was debris in the roadway.
13. After passing the location where the "bumps" occurred, Mr. Strong checked his rearview mirror to determine what the debris was. At this time Mr. Strong saw plaintiff's body in the roadway.
14. Mr. Strong immediately put the bus in a parked position, exited the bus, and proceeded toward the body. Upon determining that a tragic accident had taken place, Mr. Strong ran to the next corner to request the use of a telephone from a bystander. As a result of the accident, decedent suffered fatal cranial injuries.
15. Soon after the accident, Sergeant Jody Proctor and Lt. Tony Pendergrass of the Henderson Police Department were dispatched to the scene. Sgt. Proctor and Lt. Pendergrass conducted an investigation of the accident, which included interviews of Mr. Strong and various other witnesses.
16. Following their investigation, Sgt. Proctor and Lt. Pendergrass determined that there was no basis upon which to file charges against Mr. Strong, and concluded that Mr. Strong had operated the bus properly.
17. Two eyewitnesses, Mr. Strong and 11-year old Angel Evans, testified at the hearing before Commissioner Hall that they observed decedent disembark from the school bus, cross in front of the school bus on Parham Street, and reach a point of safety on the other side of Parham Street. No evidence was offered to refute this testimony. Angel Evans was sitting on the driver's side of the bus and she stated that decedent dropped something and came back across the street. However, the evidence does not show how far behind Mr. Strong Angel Evans was sitting or whether she had the same or a different vantage point than Mr. Strong.
18. Various Vance County School officials were also called to the scene. These school officials conducted an independent investigation that was later analyzed by a collection of school bus traffic safety experts. After reviewing the investigation findings and reading the transcript of a deposition that had been taken of Mr. Strong, these traffic safety experts determined that Mr. Strong properly operated School Bus No. 108.
19. The School Bus Drivers' Handbook requires drivers to make sure no one is in front of the bus by counting the passengers as they unload and counting them again when they are safely off the roadway. Mr. Strong counted the children as they got off the bus and counted the same number of children on the side of the road after they had safely crossed Parham Street.
20. The School Bus Drivers' Handbook for Vance County instructs drivers to "never let a discipline problem on the bus or any other distraction interfere with checking your passenger mirrors before leaving a passenger stop." Mr. Strong was momentarily distracted after the Williams children had reached the safe side of Parham Street, but after he got his students to sit down, he closed his door, checked all his mirrors for students and traffic, and proceeded on his route as he is required to do.
21. The School Bus Drivers' Handbook requires a driver to get out and check around the bus if he cannot account for each passenger at a stop. Mr. Strong had already observed the children reach safety along Spring Street after crossing Parham Street in front of the bus. Some of the Williams children were running toward their home and some were walking. Mr. Strong then got his remaining passengers seated and checked all his mirrors prior to leaving that stop.
22. Mr. Lawrence testified that danger zones exist in front of the bus and along a ten foot area on either side of the bus. These areas are considered danger zones because there are blind spots that may not be covered by the various mirrors around the bus. Mr. Lawrence acknowledged that small children may be in areas around the bus and not be visible to the driver in the mirrors. However, once the discharged passengers have reached safety after crossing the road and have been accounted for by the driver, the driver would have no reason to get out of the bus and check under it unless he saw someone when he checked his mirrors.
24. Mr. Strong watched plaintiff and his siblings safely cross the lanes of traffic on Parham Street, reach a place of safety on the other side of the street, and start down Spring Street toward their home. Mr. Strong counted all of the children after they reached the other side of the street and checked his mirrors, as he was required to do. Having seen all the children safely across Parham Street, Mr. Strong was not required to get out and check under and around the bus, according to the School Bus Drivers' Handbook.
22. The events of June 1, 1999 resulted in the tragic death of an innocent child, which was a terrible loss to his family. However, the evidence of record fails to prove that decedent's death was due to the negligence of Mr. Strong. As shown by the expert witness testimony, Mr. Strong followed proper procedures and was paying attention to his duties as a school bus driver. Therefore, Mr. Strong acted in conformity with the school bus driver standards of care and was not negligent in the performance of his duties. There is no evidence of record to indicate Mr. Strong breached his duty of care in this matter and that such breach of duty proximately caused the death of decedent.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff filed her action pursuant to the North Carolina Tort Claims Act, which allows persons to bring actions against state departments or agencies for injuries caused by the negligence of state employees. Under the provisions of the Tort Claims Act, negligence is determined by the same rules that are applicable to private parties. Bolkir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). The terms of the Tort Claims Act must be strictly construed. Distributors, Inc. v.Dept. of Transportation, 41 N.C. App. 548, 255 S.E.2d 203, cert.denied, 298 N.C. 567, 261 S.E.2d 123 (1979). Plaintiff must show that the injuries sustained were the proximate result of a negligent act by the named state employee, acting within the course and scope of his employment. N.C. Gen. Stat. § 143-291;Davis v. Highway Commission, 271 N.C. 405, 156 S.E.2d 685 (1967).
2. In order to recover on a civil claim for negligence, plaintiff must prove the existence of a duty to him, a breach of that duty by defendant and that the breach proximately and foreseeably caused injury to plaintiff. Pulley v. Rex Hospital,326 N.C. 701, 392 S.E.2d 380 (1990).
3. In order to recover under the Tort Claims Act, the Affidavit filed in support of the claim and the evidence offered before the Commission must identify the employee alleged to have been negligent and set forth the specific act(s) of negligence. Ayscuev. Highway Commission, 270 N.C. 100, 153 S.E.2d 823 (1967). Furthermore, without proof of negligence by the specific named employee, plaintiff may not recover. Woolard v. N.C. Dept. ofTransportation, 93 N.C. App. 214, 377 S.E.2d 267, cert. denied,325 N.C. 230, 381 S.E.2d 792 (1989).
4. In Greene v. Board of Education, 237 N.C. 336, 75 S.E.2d 129
(1953), the Supreme Court found that the high degree of caution and the standard of care for school bus drivers, as recited in the rules adopted by the North Carolina Board of Education, require that the driver "must `supervise the activities of children discharged from the bus until they have crossed the highway in safety or are otherwise out of danger' and `shall not start the school bus until pupils are seen to be out of danger.'"Id. at 341, 75 S.E.2d at 131-132. The Court continued by noting that the negligence of the bus driver in that case "lies in the fact that he, having discharged the children from the bus, failed to exercise proper care to ascertain that they and each of them `had crossed the highway in safety' or were `otherwise out of danger.'" Id. at 342, 75 S.E.2d at 132.
5. In Slade v. Board of Education, 10 N.C. App. 287,178 S.E.2d 316, cert. denied, 278 N.C. 104, 179 S.E.2d 453 (1971), the Court interpreted Greene as a case in which the element of negligence "was not the failure of the driver to exercise caution in the operation of his school bus, but his failure to ascertain thathis discharged passenger was in a place of safety before startingthe bus forward." Id. at 291, 178 S.E.2d at 319 [Emphasis added]. The Court also reviewed cases from other jurisdictions that have held that a school bus driver's duty of care extends until the pupil reaches the opposite side of the road. See, Taylor v.Patterson's Adm'r, 272 Ky. 415, 114 S.W.2d 488 (1938), (requiring that a bus driver exercise the highest degree of care for rider safety until the passengers safely reach across the street and out of danger from the passing traffic); see also, Hunter v.Boyd, et al., 203 S.C. 518; 28 S.E.2d 412 (1943), ("Cars were approaching in both directions and it was alleged that the bus driver did not care for and protect the child and see that he gotsafely across the highway, but on the contrary left him in a highly dangerous situation." Slade v. Board of Education, supra, at 294, 178 S.E.2d at 320)
6. Plaintiff argued that the bus driver negligently discharged decedent at an unsafe location. N.C. Gen. Stat. § 143-300.1
provides in pertinent part:
 The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education which claims arise as a result of any alleged mechanical defects or other defects which may affect the safe operation of a public school bus resulting from an alleged negligent act of any maintenance personnel or as a result of any alleged negligent act or omission of the driver of a public school bus and which driver was at the time of the alleged negligent act or omission operating a public school bus in the course of his employment by or training for that administrative unit or board.
Therefore, any claim of negligence stemming from the design of the bus route that was devised by the transportation section of Vance County Schools is not properly heard by the Industrial Commission. See also, Huff v. Board of Education, 259 N.C. 75,130 S.E.2d 26 (1963), (Supreme Court noting that if an award is made, it must be based on the negligent act or omission of the driver of a public school bus and not on an act or omission of a principal or county board of education).
7. There was no negligence on the part of any named employee of defendant while acting within the scope of his employment which proximately caused the decedent's death. N.C. Gen. Stat. §143-291 et seq.
8. Therefore, under the law, plaintiff is entitled to no damages. Id.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 16th day of January, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER